United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 07, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 23-30628 |
| JPG RENEWABLES LLC, | § § | CHAPTER 7 |
| Debtor. | § § | |
| BESTRENEWEDOIL, LLC, CARLOS RAMIREZ AND DRCHR OIL & GAS INVESTMENTS, LLC, | § § § § § | |
| VS. | § § | ADVERSARY NO. 23-3027 |
| JPG RENEWABLES LLC, JUAN FERNANDO PASTRANA, PASTGON MGMT, LLC, PASTGON, LP, LUB-LINE, LLC, AND GLORIA MARLENY PASTRANA, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This case, originally styled *Bestrenewedoil, LLC et al v. JPG Renewables, LLC, et al.*, Cause No. 20-12-15803 (the "State Court Case"), was removed from the 457th Judicial District of Montgomery County, Texas on February 27, 2023. The State Court Case commenced on March 13, 2019, when Plaintiffs filed their Plaintiff's Original Petition alleging that JPG Renewables, LLC ("JPG") and others were liable for fraud and fraudulent inducement related to the Plaintiffs' purchase of membership interests in JPG, and for breach of company regulations arising from the misappropriation of assets belonging to JPG. Further, the State Court Case involves a counterclaim asserted by JPG seeking a declaratory judgment that, among other things, it is a prevailing party under the parties' agreement and is entitled to recover its attorney's fees and costs in defending the claims made against it.

JPG filed a bankruptcy petition under Chapter 7 on February 27, 2023, and also removed the State Court Case to this Court that same day. The Chapter 7 Trustee was a third-party plaintiff.

The Trustee sold all claims of the debtor JPG in this litigation to Juan Fernando Pastrana.[1] The live pleadings in this case are the Plaintiffs' Amended Complaint filed on June 29, 2023, which no longer has Patgon Mgmt or Pastgon, LP as defendants,[2] Lub-Line's Amended Answer,[3] Fernando Pastrana's Amended Answer and Counterclaims,[4] and Counter defendants' Answer to Counterclams.[5]

Plaintiffs, Bestrenewedoil, LLC and Carlos Ramirez (collectively "Plaintiffs") allege that Juan Fernando Pastrana ("Mr. Pastrana" or "Fernando Pastrana") and JPG, conspiring with Lub Line and Ms. Gloria Pastrana, fraudulently induced Plaintiffs to invest a collective $3.25 million in an oil recycling facility in Pasadena, Texas (the Project).

The case involves the Plaintiffs' purchase of membership interests in JPG, a company that was established prior to Plaintiffs' involvement, for the sole purpose of constructing and operating a used oil recycling facility in Harris County, Texas (the "Project"). Plaintiffs allege that Fernando Pastrana and JPG, in conspiracy with Gloria Pastrana and Lub Line, LLC (collectively "Defendants") fraudulently solicited Plaintiffs' investment in an oil recycling project. To entice Plaintiffs to invest, Mr. Pastrana and JPG represented that they had invested specific amounts of money in the Project when they had not. Relying on these false representations, Plaintiffs invested their own money -- $1.625 million each. Plaintiffs allege that Defendants then covered up their fraud for years until the analysis of Plaintiffs' forensic accountant and discovery in this case revealed the truth. Plaintiffs seek recovery of the amounts they invested.

## FACTS AND DISCUSSION

Fernando Pastrana is the founder and owner of Lub-Line, LLC ("Lub-Line"), which had been in operation for about 15 years prior to 2012. Gloria Pastrana was the Chief Financial Officer of Lub-Line. On January 31, 2012, Fernando and Gloria Pastrana, husband and wife at the time, (collectively the "Pastranas") organized JPV Renewables Corp. ("JPV"), a Texas corporation with the Pastranas as Directors. On February 18, 2014, JPV filed a Certificate of Conversion whereby JPV was converted from a Texas corporation to JPG Renewables, LLC, a Texas limited liability

---

[1] Case No. 23-30628, ECF No. 51.
[2] ECF No. 15.
[3] ECF No. 30.
[4] ECF No. 32.
[5] ECF No. 41.

2 / 10

company. JPG was formed for the stated purpose of designing, constructing, and operating a used motor oil recycling facility. At the time, the Pastranas were Managers of JPG.

In the fall of 2013, Fernando Pastrana initiated discussions about investing in the Project with Dr. Enrique Quintero ("Dr. Quintero"), and Carlos Ramirez ("Ramirez"). The Pastranas, and Dr. Quintero were neighbors and socialized. They attended parties in each other's homes where Dr. Quintero introduced the Pastranas to Ramirez. During these social visits, Mr. Pastrana described his experience as the founder and CEO of Lub Line, LLC, a distributor of specialty oils. As a result of these discussions, Dr. Quintero formed a special purpose limited liability company, Bestrenewedoil, LLC on August 18, 2014, of which Dr. Quintero is the sole member. After his initial investment, Ramirez also formed a special purpose entity, DRCHR, LLC ("DHCHR") on July 20, 2015, of which Ramirez is the sole member. Ramirez then transferred his membership interest in JPG to DRCHR, LLC. In a previous Order entered on December 21, 2023,[6] this Court found that Ramirez is the real party to have standing to assert his fraud claim, and not DRCHR. Ramirez and Bestrenewedoil ultimately paid $1.625 million each (collectively $3.25 million) to acquire a 12.6% ownership interest (collectively 25.2% ownership interest) in JPG to participate in the Project.

On June 11, 2014, and June 13, 2014, Focus Strategies[7] provided Ramirez and Bestrenewedoil identical copies of a Private Placement Memorandum (the "PPM") regarding the potential investment in the Project.[8]

Focus Strategies prepared solicitation materials, including the PPMs to assist Mr. Pastrana and JPG in soliciting investments in the Project. Mr. Pastrana (individually and on JPG's behalf) and his attorney, Patricia Chapman, had significant involvement in drafting the PPMs. Mr. Pastrana, JPG and Lub-Line gave Focus Strategies information to draft the PPMs, including specific dollar figures and statements regarding development costs to date incurred and/or invested by JPG and Mr. Pastrana. Focus Strategies relied on the information that Mr. Pastrana and Lub-Line provided for inclusion in the PPMs and other materials.

Accordingly, relying on the written and verbal representations by JPG and Mr. Pastrana, Dr. Quintero and Ramirez each entered into Investment Agreements one dated August 28, 2014,[9]

---

[6] ECF No. 76.
[7] Focus Strategies, Inc. is an investment bank that Mr. Pastrana hired to solicit the investments involved in this case.
[8] ECF 89-1, 89-2
[9] ECF No. 85-4

and one dated August 29, 2014,[10] and the Second Amended and Restated Regulations of JPG dated September 3, 2014.[11] Through these documents they each subscribed for a 12.6% ownership interest in JPG. In exchange, Dr. Quintero and Ramirez each directed the wiring of $1.625 million to JPG on August 28, 2014.

The identical PPM's contains a financial section (page 73). Quoting from that section

"As of June 2014, JPG had incurred development costs of $7,069,489." The calculation of these costs is broken down on an internal spreadsheet maintained by Focus Strategies. They include two classifications of costs "soft costs" which total $3,512,852 and "land costs" which total $3,556,637.

The spreadsheet[12] indicates who is responsible for the calculated amounts contained in the spreadsheet. As to soft costs the spreadsheet indicates that Lub-Line is responsible for a $939,906 cost titled "Project Development Advisor – Goldsberry." Fernando Pastrana is responsible for $378,700 cost titled "Consultant – Accounting- Rodriguez," referring to Gabriela Rodriguez. Both these costs are totally without any basis. They consist of numbers which are simply made up. Fred Goldsberry testified he never invoiced any costs and that he never expected to be paid. Instead, he testified that he expected to be brought in on the Project if it was ever fully funded. Gabriela Rodriguez did not testify but there is nothing in the record to support the fact that these costs were incurred or would ever be incurred. These were simply made-up numbers presented to induce the $3,250,000 investment made by the Plaintiffs.

The soft costs also include an overstatement of payments made to Pesco-Beam. The costs are shown as $778,000, when in fact only $303,000 was actually incurred and paid. The spreadsheet indicates that this cost is from the original proposal, whose authorship the Court holds is Fernando Pastrana. Again, this was a "puffed up" number presented to potential investors to support their investment in JPG.

The number presented in the PPM for "land costs" is again without merit. The land the subject of these land costs is a 41.546-acre tract located in an industrial development located off Red Bluff Road commonly called Bayport. It was purchased by Lub-Line on July 17, 2013, for

---

[10] ECF No. 85-7.
[11] ECF No. 85-21.
[12] ECF No. 85-18

4 / 10

$5,140,080.[13]  There was a down payment of $1,305,312.  Additional costs at closing included $41,466 for loan fees, $60,592 for title insurance and escrow, $216 in recording fees, $48,169 in pro-rated taxes and $1,950 in legal fees.  First, none of these costs were incurred or paid by JPG, it never owned the land, it never benefited from the land or these purported costs.  Second, the calculated number in the PPM strangely includes the down payment, all costs of closing and then $2,098,932 in appreciation in land value [a dubious number and not supported by any evidence] for a total of $3,556,837.

As best the Court can tell the development costs actually incurred by JPG totaled at the most to be $1,719,046.  An overstatement of development costs in the PPM of at least $5,350,443 is a material misrepresentation in the PPM.  That Fernando Pastrana and Lub-Line made these false representations to induce the plaintiffs to invest $3,250,000 is without doubt.  Fernando Pastrana and Lub-Line could not have justified an investment of over 3 million dollars for the limited participation offered to the Plaintiffs based on development costs of only $1,719,046.

The PPM relates to the offer and sale of 25.20% of the membership interest in JPG Renewables, LLC. to the Plaintiffs. This is the Tranche A funding.  A second offering, the Tranche B offering was to offer up to 37.81% of the interest in the company.  The PPM, however, anticipates that following the Tranche B subscription, there will be dilution and that Tranche A interests will thereafter represent 7.83% of the membership interests.  Upon its full subscription, the PPM indicates that Fernando Pastrana will own approximately 45.90% of all membership interests.  It is evident to the Court that Mr. Pastrana's and Lub-Line's false representations of incurred costs of $7,069,489, were offered to support the proposed proportional ownership interests disclosed in the PPM to be bought by Dr. Quintero and Ramirez.

That the PPM was materially false is without doubt.  It overstated soft costs by almost $1,800,000.  This included non-existent project development costs of $939,906 to Fred Goldsberry, an overstatement of costs paid to Pesco Beam of $475,000, non-existent accounting fees of Gabriela Rodriguez of $378,700.  It also contained a totally false number for land costs of $3,556,837 both because JPG had not incurred these costs [they never appear on the JPG

---

[13] ECF No. 91-13, See also ECF No. 94-9 Special Warranty Deed states $3,855.030.00 promissory note, and that the property was purchased by Lub-Line, which subsequently deeded the property to JPG Real Estate, LLC on June 27, 2014 (ECF No. 94-11). JPG Real Estate, LLC sold the property on October 25, 2017, to Bayport Petrochemical Real Property Holdings, LLC (ECF 95-3).  None of the proceeds of the sale were transferred to JPG.

financials], the true costs of acquisition were being paid by a third party, and the cost contains an amount for appreciation in value [which are again based on a dubious valuation] of $2,098,932. When the PPMs stated that Mr. Pastrana and/or JPG had invested nominally $7 million in the Project, that statement was false, and Fernando Pastrana and Lub-Line knew that the statement was false. Specifically, Mr. Pastrana and Lub-Line knew that neither Fred Goldsberry nor Gabriela Rodriguez had been paid the amounts represented to Focus Strategies which were placed in the PPM. Additionally, it was clear that Goldberry or Rodriguez would never be paid these amounts. Further, they knew that neither Fred Goldsberry nor Gabriela Rodgriguez expected to be paid those amounts. Further, Mr. Pastrana and Lub-Line knew that JPG had not incurred approximately $3.5 million in costs associated with the land purchase. Fernando Pastrana and Lub-Line had knowledge of the falsity of the representations through their positions in the transactions at issue.

The PPM contains many disclaimers as to past or future performance. The investments of the Plaintiffs were potentially risky, and that risk affected the possible return, i.e., there could have been a total loss of the investment or a great return on the investment. This case, however, is not about past or future performance of JPG. If the financial information contained in the PPM was accurate and the investment failed, then the Plaintiffs would have lost their investment, and the Court would hold they had no recourse.[14] Unfortunately, the PPM is materially false, and the false representations contained therein are directly attributable to Mr. Pastrana and Lub-Line. This Court is unwilling to hold that the financial disclosures in the PPM can in effect be a horrendous lie but that lying is acceptable if you draft a sufficient disclaimer. This would be an abhorrent result.

Defendants used Plaintiffs' investments in ways that did not match how JPG and Mr. Pastrana represented that funds would be used. Defendants' misuse of funds, and the manner in which they concealed it, show that Defendants had fraudulent intent in soliciting Plaintiffs' investments.

During a 7-month period between September of 2014 and March of 2015, Lub Line charged JPG a monthly service fee for engineering and design services at the rate of $89,100 per month for 4 months and at the rate of $39,600 per month for 3 months, but Lub Line never provided any engineering and design services for JPG. These invoices did not specify who at Lub Line was

---

[14] *Guevara v. Lackner*, 447 S.W.3d 566 (Tex. App –Corpus Christi 2014, no pet.) (Predictions and opinions regarding the future profitability of a business generally cannot form a basis for a claim of fraud.

supposedly providing the engineering and design services. Mr. Pastrana testified that the payments to Lub Line were for Mr. Goldsberry's services. However, Fred Goldsberry was not an employee of Lub Line. Further, Mr. Pastrana has not explained why Lub Line would invoice JPG for Mr. Goldsberry's services when Lub Line did not employ Mr. Goldsberry. Further, Lub Line never paid Fred Goldsberry for any work he did on the Project and Mr. Goldsberry never expected Mr. Pastrana or Lub Line to pay him for his services.

The Plaintiffs, who are not unsophisticated investors, assumed they would be passive participants in the business of JPG and the testimony supports such a holding. JPG represented in the PPM that they were at the end of the design and development stage of the process. This is a reasonable representation if JPG had actually incurred development costs of $7,069,489. JPG was seeking $3.25 million of investor financing to provide the funds necessary for the completion of the design and development stage. The investor Plaintiffs or their principals are by their education both a physician and a veterinarian. The project was to construct a sophisticated oil recycling plant turning used motor oil into synthetic motor oil. Their expertise in their respective medical fields would have been of no assistance in what was basically an engineering endeavor to create plans for the construction of a specialized petrochemical plant.[15] There was no expectation or requirement that they actively participate in the business of JPG. As they did not have any required expertise in engineering or oil recycling, it is difficult to see how they could have participated. Their efforts were to simply provide the first capital influx to JPG, the described Tranche A funding to complete design and development stage as to solicit further investors to provide the second [and final] Tranche B funding for construction funding[16] to actually construct the specialized petrochemical plant.

Being passive participants, the Plaintiffs were unaware of the financial condition of JPG and the Court holds that financial reporting which would have disclosed the serious misrepresentations in the PPM was actively withheld from them by Mr. Pastrana and Lub-Line. Reports received by the Plaintiffs concerning this investment between the transfer of the $3.25 million and January 17, 2017, were as expected. These reports stated that everything was going smoothly. This continued until what the Plaintiffs term as the "alarm meeting." The Court holds

---

[15] In this regard an industrial facility where chemical processes transform used motor oil into other essential materials such as synthetic motor oil.

[16] An amount as high as $200 million dollars.

that the statute of limitations began to run on January 17, 2017, at that "alarm meeting." The minutes of that meeting[17] indicate that "Mr. Pastrana reported that the 40-acre site owned by JPG Real Estate LLC (a proposed location for the JPG Renewable project) is becoming a financial strain on JPG Real Estate, LLC." By testimony this disclosure shocked the Plaintiffs. Ultimately this disclosure led to a request to examine the books and records of JPG Renewables, LLC, by Dr. Quintero and Ramirez, the hiring of counsel and an accountant by the Plaintiffs, and this lawsuit that was filed on their behalf on March 13, 2019.

## LEGAL ANALYSIS

**Fraud and fraudulent inducement against Fernando Pastrana and JPG**

For the court to find either fraud or fraudulent inducement, the Plaintiffs must show that Fernando Pastrana and JPG made a material representation, with knowledge that the representation was false or with reckless disregard of the truth of the representation, intending that the Plaintiffs relied on the representation, that the Plaintiffs did rely on the representation and that the Plaintiffs were injured as a result.[18]

The testimony at trial suggested that JPG and Fernando Pastrana would have been happy to provide additional information if either of the Plaintiffs had requested it. The evidence also showed that the Defendants believed they had no duty to disclose that information. A duty to disclose occurs 1) when there is a confidential or fiduciary relationship, 2) when one voluntarily discloses information, the whole truth must be disclosed; 3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and 4) when one makes a partial disclosure and conveys a false impression.[19] It is undisputed that the parties signed confidentiality agreements and that Fernando Pastrana and JPG voluntarily disclosed false information, that conveyed a false impression.

The Court finds as to JPG and Fernando Pastrana, that they made false, material representations. The representations arose in the context of a valid contract. When made, they knew that the representations were false or made them recklessly without any knowledge of the truth and as a positive assertion. They intended to induce Ramirez and Bestrenewedoil [Dr.

---

[17] ECF No. 90-18
[18] *In re Arnette*, 454 B.R. 663 (Bankr. N.D. Tex. 2011) (internal cite omitted.); *Yzaguirre v. KCS Res., Inc.*, 47 S.W.3d 532 (Tex. App. - Dallas 2000).
[19] *Copeland v. Alamo Billing Co.*, No. 420CV00393, 2021 WL 2792354 (E.D. Tex. May 3, 2021) *citing Guevara supra* at 578.

Quintero] to act on the representations. Ramirez and Bestrenewedoil actually and justifiably relied on the representations. Ramirez and Bestrenewedoil thereby each suffered injuries with $1.625 million in damages, marking the difference between the amount invested ($1.625 million) and the value received ($0).

**Conspiracy to commit fraud against Fernando Pastrana, JPG and Lub-Line**

To prevail on a conspiracy claim, the plaintiff must prove: 1) two or more persons, (2) the persons seek to accomplish an object or course of action, 3) a meeting of the minds on the object or course of action, 4) one or more unlawful, overt acts are taken in pursuance of the object or course of action, and 5) damages incurred as a proximate result.[20] The Court finds as to JPG, Mr. Pastrana and Lub-Line that they had knowledge of, agreed to, and intended a common objective or course of action to defraud the Plaintiffs that resulted in damages to Plaintiffs. Fernando Pastrana and Lub-Line as Defendants performed an overt act to further the conspiracy to defraud the Plaintiffs. Moreover, Mr. Pastrana was acting for his own personal benefit, beyond the scope of agency relationships with Lub Line and JPG.

**The Directed Verdict as to Gloria Pastrana**

Plaintiffs have also plead a cause of action for conspiracy against Gloria Pastrana. At trial, Gloria Pastrana moved for a directed verdict. The Court found that there was insufficient evidence to support the third element of a meeting of the minds as to Gloria and granted the motion for a directed verdict by order entered on February 6, 2024.[21] The Court ordered a take nothing judgment as to the claims of Bestrenewedoil, Ramirez and DRCHR Oil & Gas Investments, LLC against Gloria Pastrana.

**Damages**

Exemplary damages. The harm to Plaintiffs Ramirez and Bestrenewedoil resulted from Defendants JPG, Pastrana and Lub-Line's fraud, which entitles them each to an award of exemplary damages of $536,250.00. The conspiracy finding against all Defendants entitles Plaintiffs to an award of exemplary damages.

---

[20] *Turner v. Pavlicek*, H-10-00749, 2011 WL 4458757 (S.D. Tex. Sept. 22, 2011); *Tri v. J.T.T.*, 162 S.W.3d 552 (Tex. 2005).
[21] ECF No. 128

Accordingly, Plaintiff Carlos Ramirez is granted a judgment jointly and severally against JPG Renewable, LLC, Juan Fernando Pastrana and Lub-Line, LLC in the amount of $2,161,250 plus judgment at the federal interest rate of 4.76%.

Plaintiff, Bestrenewediol, LLC is granted a judgment jointly and severally against JPG Renewable, LLC, Juan Fernando Pastrana and Lub-Line, LLC in the amount of $2,161,250 plus judgment at the federal interest rate of 4.76%.

All other relief requested by the Plaintiffs is denied. All relief requested by the Defendants, counter plaintiffs, third party plaintiffs, third party defendants, counterclaimants or any other party named in this adversary proceeding is likewise denied.

**SO ORDERED.**

SIGNED 02/07/2024

_____
Jeffrey Norman
United States Bankruptcy Judge